JULIUS WELLNER v. THEODORE J. GERTH.

Argued November 2, 1910—Decided April 20, 1911.

The P. company, being the owner of a block of stock of the R. K. company, offered the R. K. stock to its shareholders in exchange for its own stock and in proportion to their respective holdings. Plaintiff was the holder of one hundred, and thirty-eight shares of the P. stock which he had hypothecated with the defendant as security for a debt which he owed him. As such holder the plaintiff was entitled to exchange sixty-seven shares of it for a like number of shares of the R. K. company, and an opportunity to do so was offered to him. Neglecting to take advantage of the opportunity, the defendant was then requested by the treasurer of the P. company to exchange sixty-seven shares of the plaintiff's stock, which he held as collateral, for an equal number of shares of the R. K. stock. This the defendant declined to do, but offered to exchange sixty-seven shares of his own P. stock for the R. K. stock upon which plaintiff had been given the option. His offer was accepted, and the exchange was made. *Held*, that in exchanging his own stock in the P. company for the R. K. stock the defendant did not infringe upon any right of the plaintiff, and was not accountable to him for any profit which he (the defendant) had made out of the transaction.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the plaintiff, *Lafferty & Pilgrim*.

For the defendant, *Louis Hood*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. On October 13th, 1900, Gerth loaned to Wellner $500 upon the latter's promissory note payable on demand and secured by the pledge of one hundred and thirty-eight shares of the capital stock of the Perfection Music Box Company. The claim of Wellner, as originally set out in his declaration, was that while Gerth was in posses-

sion of this collateral he exchanged sixty-seven shares of it for an equal number of shares of the stock of the Riley-Klotz Manufacturing Company; that the latter stock was of much greater intrinsic value; and that Gerth was accountable to him for that excess value. The case was tried by the court without a jury and resulted in favor of the plaintiff.

The following is a summary of the material facts found by the trial court:

The Perfection Music Box Company had issued and outstanding one thousand nine hundred and fifty-four shares of capital stock of the par value of $195,400, and it was the owner of nine hundred and fifty-four shares of the stock of the Riley-Klotz Manufacturing Company of the par value of $95,400, which it had acquired in exchange for an equal number of shares of its own capital stock. At a stockholders' meeting of the Perfection Company held April 8th, 1901, a resolution was passed authorizing the reduction of its capital to $100,000, and also authorizing the disposal of its nine hundred and fifty-four shares of the stock of the Riley-Klotz company.

This being the situation, the Perfection Music Box Company formulated and proceeded to carry out a plan for the reduction of its own capital stock to the sum of $100,000. The scheme was this: The Perfection Company was to sell for not less than par value its holding of the capital stock of the Riley-Klotz company, and with the proceeds of such sale buy an equal amount of its own stock and retire and cancel the same. The shares of stock of the Riley-Klotz company were first to be offered to the shareholders of the Perfection Company, each shareholder being permitted to purchase an amount of that stock proportionate to his holdings of the stock of the Perfection Company; the option was to remain open one week, and if any of the stock then remained unsold, it was to be offered to any stockholder of the Perfection Company willing to pay for it, and if more than one desired to purchase, the stock was to be divided equally among them in proportion to their holdings of the capital stock of the Perfection Company. The Perfection Company was then

to purchase from each of its stockholders, who should purchase stock of the Riley-Klotz company, one share of the capital stock of the Perfection Company at par for every share of stock of the Riley-Klotz company purchased by him. All shares of the capital stock of the Perfection Company so purchased were to be immediately canceled and retired.

The defendant, Gerth, was the owner of four hundred and thirty-five shares of stock of the Perfection Company, and was, under the resolution, entitled to exchange two hundred and twelve shares of that stock for two hundred and twelve shares of the stock of the Riley-Klotz company. The plaintiff, Wellner, owned one hundred and thirty-eight shares of the Perfection Company's stock (being the shares pledged as collateral security for the note of $500), and was, under the resolution, entitled to exchange sixty-seven shares of his stock for sixty-seven shares of the stock of the Riley-Klotz company.

In execution of the scheme formulated by the Perfection Company a notice was sent to each of its stockholders on the 6th day of May, 1901, reciting the purpose of the company to reduce its capital stock and the method adopted for accomplishing this result, and advising him of the number of shares of the Riley-Klotz stock he was entitled to purchase and the number of shares of Perfection stock he could turn back to that company. He was further notified that his option to purchase the Riley-Klotz stock and sell his Perfection stock would expire on the 13th of that month, and that if he did not exercise his option within the time specified the stock of the Riley-Klotz company, which he was entitled to purchase under the scheme, would be sold to any other stockholder of the Perfection Company who might desire to purchase it. Wellner received this notice, but neither within the period limited by it nor at any later time, sought to avail himself of his option to purchase the Riley-Klotz stock.

On the 16th of May, three days after the time limit within which stockholders were required to exercise their option had expired, one Clark, who was the treasurer of the Perfection Company and who had charge of its stock book and transfer

book, suggested to Gerth that he, as the holder of Wellner's hypothecated stock, should, under the latter's expired option, surrender to the Perfection Company sixty-seven shares of that stock and take Riley-Klotz stock in exchange. Gerth refused to do this, but offered instead to surrender sixty-seven shares of his own stock in the Perfection Company and take in exchange a like number of shares of the Riley-Klotz company's stock. This offer was accepted by Clark, and Gerth thereupon transferred sixty-seven shares of his own Perfection Company's stock to that company, and received therefor an equal number of shares of the Riley-Klotz stock.

In the meantime the Wellner note for $500 remained unpaid, and was carried by Gerth until December 30th, 1902. On that day he foreclosed upon his collateral (the one hundred and thirty-eight shares of the Perfection Company stock). The sale was regularly made by a broker, and was in compliance with the terms under which the pledge was made. The price brought was just enough to pay the amount due upon the note. The purchaser was Mr. Clark, the treasurer of the Perfection Company. The validity of this sale was never questioned by Wellner, so far as the case shows, and it was properly found by the court below to be lawful and valid.

From this recital of facts it is clear that the claim of Wellner that Gerth, while in possession of the hypothecated stock, exchanged a part of it for stock of another company of much greater value, and, by reason of making such exchange, became obligated to account to him for the difference in value between the two securities has not been sustained by the proofs. The trial court, however, considered that, as Gerth, because of his possession of Wellner's collateral, was allowed to exercise the latter's option, and so acquired sixty-seven shares of the Riley-Klotz stock in exchange for sixty-seven shares of his own stock in the Perfection Company, Wellner was entitled to recover from him the profit, if any, made in the transaction, and ordered the declaration amended so as to exhibit that cause of action.

The concrete question presented by the rule to show cause, consequently, is whether the amended declaration exhibits a

cause of action in favor of the plaintiff against the defendant. We think that it does not. If any obligation exists on the part of Gerth to account to Wellner for the profit which he (Gerth) made in the exchange of sixty-seven shares of his own stock in the Perfection Company for sixty-seven shares of the Riley-Klotz stock, it arose immediately upon the consummation of that transaction. It is necessary, therefore, to consider the situation at that time. Wellner had been afforded an opportunity to exchange sixty-seven shares of his hypothecated stock for Riley-Klotz stock. This, by his inaction, he had inferentially declined to do, and his right to make the exchange had expired. At its expiration a new right sprang into existence, and that was a right in the other holders of the Perfection Company's stock to take the Riley-Klotz stock which Wellner had refused. When, therefore, the treasurer of the Perfection Company permitted Gerth to exchange sixty-seven shares of his own stock for the sixty-seven shares of Riley-Klotz stock which had been offered to Wellner and which he had declined, this transaction was not a violation of any right of Wellner, but an infringement upon that of those holders of Perfection Company's stock who had the substitute option. They, and they alone, were entitled to complain; for, except as to them, the right of the Perfection Company at the time of the transfer to Gerth to sell the sixty-seven shares of Riley-Klotz stock to whomsoever it saw fit was absolute. The fact that, at the time of the transfer to Gerth, he was in possession of Wellner's Perfection Company's stock as collateral is immaterial. That possession gave him no superior equity to acquire the Riley-Klotz stock, in his own right, but neither did it disqualify him from doing so. He expressly refused to exchange any of the Wellner stock for it (and, of course, he would have had no right to do that), and instead exchanged his own individual property for it. By doing so, he became its absolute owner, free from accountability to anyone by reason of his ownership, except, perhaps, to those whose options he had forestalled.

There was received in evidence proof of dealings with the one hundred and thirty-eight shares of the hypothecated

Wellner stock, after the foreclosure sale thereof, which was considered by the trial court as material in determining the question of the liability of Gerth in the present action. We have not considered it necessary to recite this proof for the reason that, as the foreclosure sale was a lawful and proper one, we are of opinion that what was afterward done with that stock by the purchaser could neither operate to terminate a liability existing against Gerth in favor of Wellner, if such liability existed, nor to create one if it did not exist.

The rule to show cause will be made absolute.